Pearson, J.,
dissentiente. What amounts to ordinary neglect is a question of law, and it is for the Court to say, whether a given state of facts fixes a pijrty with the charge of such neglect.. Every case, therefore, must depend on its peculiar circumstances, and it is seldom possible to generalise and establish a principle. Eor this reason, I did not file a dissenting opinion, although not entirely satisfied with the decision in Heathcock v. Pennington, 11 Ire. 640; for, I thought it amounted to ordinary negligence, to make a boy work at a dangerous position, from 9 o’clock at night, until the next morning, during the month of January, and that at least one of the hands should have been a grown person. Boys, are not going to sleep, at allotted hours, in order to prepare themselves *410 for nigbt work, and it was not prudent to trust tliem entirely by themselves. In that case, the boy was hired for the purpose of driving the horse at “ the whim.” It was known to be dangerous, and that it had to be worked night and day. Tin's clearly distingushes it from the present case, and besides, Ch. J. RuKFiN, in the opinion delivered by him, evidently confounds, “ ordinary” and “ gross” neglect. He uses the word “ gross” as applicable to the degree of neglect, in that case, four times, and concludes that the defendant was not, under the circumstances, “ exposed to the imputation of negligence, much- less gross negligence.” Yet, that case, is used as a guide for arriving at a conclusion in this, and this, will be used as fixing the principle, that if one gives a general order, although he knows that the party has been in the habit of disobeying it, and has no reason to believe that he will obey it on the particular occasion, he may screen himself, under such general order, from a liability to which his negligence would otherwise expose him. Against such a principle, I feel called on to enter my dissent.
His honor told the jury, that if blasting rock was a dangerous business, and the danger was increased by blasting after dark, “ it was such an act of rashness” as would make the defendants liable. “ But if the jury should further jmd¡ (that is, although there was this danger and rashness,) that Calvin’s business was to attend the carts, and that the overseer had given an order for those thus employed, to get out of the way, but Calvin against his general order, and without his knowledge, had taken the place of one of the blasting hands, and in consequence was killed, the defendants would not be liable.”
Blasting rock after dark is dangerous; the blasting fereman remonstrated against it, and the defendants’ overseer was not only guilty of ordinary neglect, but of gross neglect — nay, rashness — in persisting and having it done. I have arrived' at the conclusion, that the order for the other hands to get out of the way, does not relieve the defendants from liability, on account of this rashness of their agent, on two grounds:
*411 1st. Suppose the order to have been given bona fide, in respect to Calvin, as the blast was to be made under circumstances of increased danger, a greater degree of vigilance being called for at the hands of the overseer, ordinary prudence required that he should see to it that his order was-obeyed. It wont do for him to say that he did net know Calvin was there. This proves, either that it was so dark that he could not see, when none but a madman would set off'a blast, or he did not take the trouble to look, although as we are to assume, he was about to do a rash act. If one of the regular hands had been killed, there is~ no doubt the defendants would have been liable, although they were hired for the purpose of doing this dangerous work, and it would seem, there should be a like liability in respect to Calvin, who was hired for ordinary work, and who ought not to have been permitted to have any thing to do with blasting.
2nd. But in the second place; Calvin had worked under this overseer the year before; he knew that 'Calvin was in the habit of disobeying his general order; so, in respect to Calvin it amounted to nothing, and was the same' as if the he had been excepted out of it. IIow can the law allow such an order, impliedly revoked as to Calvin, and allowed to be disregarded by him, as a thing of course to be set up, and have the effect of relieving the defendants from a liability to which, it is admitted, they were otherwise exposed on account of the rashness of their agent ?
State v. Privitt, 4 Jones’ Rep. 100, furnishes an analogy in reference to the effect that this general order is entitled to. The defendant was indicted under the late statute, for a sale of liquor to a slave by his clerk.' The clerk swore that he had general instructions, from the. defendant, not to sell to slaves. It was left to the jury to say, whether by a course of practice to the contrary, or by a special approval, the general instructions were not abrogated. The defendant was convicted,'and on appeal, this Court concur in the opinion given of the general instructions in the Court below, and intimate that he had been dealt with .very favorably. The opinion *412 concludes with a suggestion, that if general instructions are to hare the effect contended for, the statute would be very easily evaded. In-our case a general order is allowed to have the effect of relieving from liability, and nothing is said, and no stress is given to the fact of its being virtually abrogated “ by a course of practice to the contrary, or by special approval.”
Per Curiam. Judgment affirmed.